Case number 151758, an appeal from the Western District of Missouri. Okay, Mr. Smith, you want five minutes for rebuttal? I do, Your Honor. Okay. Mr. Marcus, are you ready? Yes, Your Honor. All right. You can begin. May it please the Court, Your Honor, this is an appeal from a trial verdict. There are two products here on which the plaintiff has asserted that infringe the 431 patent. One I'll refer to as the multi-man, which infringes allegedly on Claim 5. The other is the twin man, which infringes on Claim 1. Our defense as to the infringement on Claim 5, the multi-man, is specifically related to the claim limitation contained in Claim 5 at line 31, wherein it specifically says, wherein the force causes the arm to shift, and in the Markman hearing, that to shift has been defined as to pivot to the lower position. So what that limitation is saying is that the arm within this mechanism needs to shift. I mean, if we accept the proposition that the trial court had the discretion to conclude that Colonel's testimony was, that he was at least qualified to testify, why isn't the testimony that the, because the entire assembly mechanism pivots, that why isn't that testimony sufficient for a jury to find infringement? Well, I think there are two issues there. One is the gatekeeping function of the Daubert, and as... But the only attack you made on, as it relates to Daubert, was qualifications, right? No, I think we made also that it was, that his opinions that were given were simply conclusory. If you look at his, at a... But you're just relying on the opinions that were in his report, and yet we now are looking at the denial of Jamal. We've got a trial, we've got testimony that was provided at trial, and we've got the question of whether or not there was substantial evidence to support a jury verdict. Right, and what I'm saying is if the gatekeeping function isn't allowed, and in this case the only opinion, without reasoning, was wherein the force causes the arm to shift to a lower position. That's Mr. Colonel's position. So when the court doesn't function as a gatekeeper, allows that in. And then at trial, when the testimony is what part of the arm shifts, and instead of focusing on, or what part of the arm pivots, excuse me, as defined. When the testimony is that, well, the arm doesn't pivot. Well, he didn't say the arm doesn't pivot. He actually refused to say that. In his testimony he said, because you said, so the arm doesn't pivot. And he said, no, that's not what I'm saying. I'm saying it does pivot because the entire mechanism pivots. Right, but the limitation is very specific. The limitation says that the arm must pivot. There are other portions within the claim which say the pivot can be in any portion of the assembly. But that specific reference that we're directing it to says that the arm must pivot. Right, so what point, I'm asking you, at what point are we interfering with the jury's function? I mean, maybe we wouldn't have read the testimony the same way the jury was, or maybe we wouldn't have believed it. But isn't this a question of whether the jury could have reasonably relied on this testimony? No, see, we think that this is a sufficiency of evidence that should have been knocked out by the judge on the Rule 50 motion. If there is zero evidence that this arm pivots in any fashion, then it doesn't meet the standard. Does the claim construction say that the arm must pivot independently of the rest of the mechanism? It says... I just don't see that in the claim. It says specifically wherein the force causes the arm to pivot to the lower position. So it's just the arm pivoting. In this case, the arm shifts in a linear... Right, but again, you're reading the claim. You never asked for that precise claim construction from the court, right? No, we asked... The court said the word shift means pivot. Correct. But it never said that the pivot has to be independent of the rest of the mechanism. Well, but this portion of the claim doesn't talk about any other portion of the mechanism. It is limited solely to the arm. There are other provisions which talk about the assembly, but this provision that we are talking about in claim 5 at line 31 talks only about the arm pivoting. Did you object at the time that that testimony was given on grounds that it was inconsistent with the claim construction? The object to the fact that... To his testimony. I don't believe so. But either... If you call an apple an orange, it doesn't mean the apple is an orange. In this case, either this shifts... Excuse me, either it pivots or it doesn't. In this case, the arm has to pivot, and this arm simply does not pivot. I think we can take a certain guidance from the fact that the USPTO granted on exactly the same evidence. I guess I'm still trying to get to the point is that what you're talking about is fundamentally a claim construction question. And if you leave aspects of the claim construction to the jury, can you complain about that after the fact? Well, but we don't get the choice of whether we leave it to the jury or not. We can say as defendants, Judge, there is no sufficient evidence to say that this arm pivots. No, but you could object and say, Judge, that's inconsistent with your claim construction, or they are now seeking an alternative construction to the claim that we've never visited before. Whether we object or not, the judge still gets to deal with that issue on a judgment as a matter of law. And in a clean reading of this, they have to determine whether or not that arm pivots or not. And if the only testimony is that the pivoting is related to a pulley adjacent to the arm, then that's not sufficient evidence on which a jury – on which a case should even go to the jury. Assuming we construe the claim to say that the pivot has to relate – that the arm has to independently pivot, which you never asked for that construction. Well, what I'm saying is if this language is determined in any other way than it is actually there, no one has asked that this term be construed as saying that the arm includes any portion of the assembly. We are saying we want just the plain reading of this. So if we're looking for simply the plain reading, we wouldn't be out there saying, and oh, by the way, make sure you don't include things that aren't in this. We want just the plain reading of this. Your adversary, in its brief, in a footnote, says that claim construction is wrong. It says that pivot in the context – excuse me, shift in the context of Claim 5 should not mean pivot. Do you have a response to that? Well, he references that if he had the opportunity, he would contest the Markman hearing ruling, wherein the term shift to was defined as to pivot to. We think that the Markman hearing was exactly correct. It was consistent with the examiner's definition when it granted Garlock its own patent on this product. That issue, the claim construction issue, was fully argued below, is that right? At the Markman hearing? At the Markman hearing. Yes. And if plaintiffs wanted to say we want that provision to be expanded to include any portion of the assembly, they certainly could have. But they also made a pretty strong argument that when they use pivot in connection with their preferred embodiments, that the fact that they chose an alternative word in the claims they chose shift is meaningful. I think there's a pretty good argument that this claim construction that we're arguing about, that even if it's limited to the arm, that it wasn't right. Well, of course, none of these issues are even before the courts, and it's certainly not part of the record. But we think that- Well, they do ask us to say if you don't affirm the infringement finding, then you need to revisit the claim construction. Well, yeah, it's certainly not a cross appeal in any way, shape, or form. Well, it can't be a cross appeal because we said- But it could have been an alternative ground for affirmance, which would have been perfectly proper. Sure. But it's not-I mean, that issue is not before the court. And it certainly hasn't been briefed by anyone, nor is-there is no basis for that right at this point. Well, I mean, they do raise it in their brief. You didn't respond to it, but they do raise it. As a footnote, yeah. Can we just turn briefly before you use up your time to the tethered- Sure. This thing doesn't work without a tether, right? The guy dies, right? Right. And if the plaintiffs wanted to assert an inducement, they could have. But they never-that's a claim they never asserted in this case. Why didn't you present more evidence about exactly what was sold? I mean, the only testimony that wasn't sold with the tether is one testimony from one person. But no documents, no information that talks about what the component parts were? Because, Your Honor, the defendant does not have the burden of proof. If the plaintiff puts on their sole- Well, I get that. But you're accused of infringement with a product that you purposely designed around the other one. And so you would think that if you were trying to design around the tether component, you would show the jury that there was no tether. And the only testimony was-the only capital testimony on the existence or non-existence was Mr. Stoffels who said a tether had never, ever been sold by Garlot. But what about-now, just in response, you've got a different burden of proof here. It's a substantial evidence because the jury found that-we assume the jury found that it is sold with the tether. Right? And so the substantial evidence that is argued to support that includes an advertisement that shows your device with a tether. Now, whether or not that's an on-sale event, let's not address that. But is it evidence to show, at least, that what was sold had a tether because what was advertised had a tether? And is that substantial evidence? I don't think it is. I don't think it is any more than anything around it would have been sold with it. Had the plaintiffs put into evidence an invoice showing that tethers had been sold with it? Well, you could have put in an invoice that showed that tethers weren't sold or photographs of the product without a tether when it's boxed. Why wasn't that kind of evidence? Because from the defendant's perspective, if evidence doesn't exist, the expectation is that the judge will say there's not enough evidence to go to the jury. There is no need to sit and muddle the record. But couldn't the jury disbelieve your one-line piece of testimony from your one person because you're out there advertising it with a price that shows the tether with it? They could, but there is nothing to indicate that he was lying any more than... Well, there is testimony there that you can't use this without a tether. And that would have been, if they would have asserted inducement, that may have been the case. But they didn't. And they have now asserted that those claims against all the distributors in a companion case down in Kansas City. So we're talking only about GALAC equipment here. And in this case, since there is no inducement and the tether isn't sold with it, there is no basis for that finding. And I see I'm down to a minute, so I should stop. Okay. Just to pick up on where we left off on the tether issue, that's the twin man. Why wasn't an inducement or contributory infringement cause asserted? Well, our reading of the case law, Your Honor, was that it was sufficient in order to establish our claim to show that there was, in fact, an offer to sell, that that was enough to show direct infringement. And, in fact, we presented, as Your Honor mentioned, that was Exhibit, I think it's A999. It was a sales sheet that was an offer to sell. It was an advertisement, a general advertisement. It wasn't a sales sheet. And that's part of my problem. As a matter of law, advertisements alone don't constitute a sufficient offer. We've been very specific. The offer has to be such that under general contract principles, someone could accept it and it's got all the terms and that you would have a closed sale. So, I mean, it's one thing to say that maybe it supports the conclusion that it was sold with a tether, but quite another to call it an offer for sale. Your Honor, our view of that would be that you've got the product, you've got the price term, that it was sufficiently clear what the price term to constitute an offer, and obviously Your Honor disagrees with that, but that was our position. And coupled with the fact that their executive said that the tether was, in fact, standard equipment on it and it couldn't be used without the tether. When he said standard equipment, you're saying he said that it was standard equipment in terms of being sold by them? Or did he say it's standard in the sense, of course you have to have the tether, because the whole point is to make sure he doesn't fall off the roof. Yes, Your Honor, standard equipment for the unit. He did not admit that it was sold by that particular corporate entity, but we presented evidence, I believe in the record, of the fact that you could access. One of the ways they sell this product is through the Internet, and if you access their website, a consumer accessing their website could navigate with just a few clicks to where you'd buy the whole package, the tether, the unit, et cetera. Did you present all of that as evidence? We did present the websites. We got Mr. Staples, I believe was his name, to talk about the fact that in just four clicks, I believe this is in our brief, that in just four clicks you could navigate and purchase the unit with the tether. In discovery, did you discover a single invoice of any sale by Garlock of the unit with the tether? I don't recall, Your Honor. I understood on that it was four clicks. It was four clicks, and you'd get to a sister company website, and so it wasn't sold by the same entity. Do I understand that correctly? Yeah, the websites are all interlinked, and so you would be on the Garlock site, and there were other, like if, I can't remember what the button is, but it would be a situation where you push a button and you'd go to this other page. Now, the other page, as my recollection is, would be, depending on where you were, where the user was located geographically, would take you to the distributor for that area where you could purchase that equipment. I believe there was testimony that was. So that isn't the tether sold by an entity other than the party that you sued? Yeah, and, Your Honor, we don't frankly believe that it's sufficient for purposes of establishing that claim. If the entity that we sued is offering the unit for sale and causing the sale of that, that that establishes the claim because you're generating interest in the infringing product and then providing a mechanism whereby a user can purchase the infringing product, that that's enough to establish that claim. There certainly, we believe, was sufficient evidence to allow a jury to find that based upon the sale sheet, the testimony at trial about it being standard equipment, the interlinked websites. We believe there was enough to submit the issue to a jury and for a jury to find that, in fact, there was an offer to sell the product in violation of the statute. Does that impact the amount of damages if it's an offer for sale? I mean, what if there's some evidence of some offers for sale, but what's actually sold doesn't include a tether? I mean, doesn't there have to be some sort of delineation there to determine damages, which one of the products had sales, I mean, tethers, and which did not?  I mean, Your Honor, we presented evidence that these products were sold with a tether. Certainly, the defendant could have presented evidence that some were, some weren't, or none of them were. But it's not their burden. I mean, they're right on that, right? Isn't it your burden to establish their damages? And we believe we did. I mean, our evidence was they sell this unit, all the units, with a tether, and that was our argument. You did submit evidence, sales figures that the jury then referred to. What did those sales figures show? Sales of units with a tether or without? Your Honor, our argument and evidence was, to answer your question directly, that was all units. So we didn't delineate. When you say units, what do you mean, units? Excuse me. Without the tether. Twin-man units, which we contend all twin-man units had to be sold with the tether because without the tether you couldn't use the unit. So we didn't delineate between units where, or excuse me, twin-man units, where it was just the unit and maybe the user didn't purchase the tether. We presented evidence of all twin-man units coupled with evidence that you couldn't use it without the tether, that they advertised it with the tether, that you would get on the website to buy the tether. When you say you submitted evidence of units, what was that? Were there invoices? Again, I'd have to consult. Sales figures. It was sales figures, Your Honor. So we had the numbers, and I believe it was basically the dollar. It was through discovery we obtained information about the dollars. And you have a witness that testified about those numbers? That was in, I believe it was through witness discovery, and so we didn't call, and gosh, it's your testimony. So you never got the invoices themselves? We never got the individual invoices is my recollection. We got the sales figures that show the units sold, the cost of units sold, and what that final number was, and then we presented that through our expert, and then through our accounting expert. I believe he testified about those numbers and used that in his analysis. We'll get back to the question of damages in a minute, but let's turn to the other issue and this claim construction question. I mean, I have to say, I think you have a pretty good argument that the claim construction was wrong, but all you do is drop a footnote and say, we don't have standing to raise it as a cross appeal, and the very case you cite says, but because you would raise it as an alternative ground for affirmance, but you don't explain why the claim construction was wrong, you don't explain what about it, so you don't actually follow the very instructions in the case, and we've got lots of cases where that says raising something in a footnote is meaningless. So why isn't that way? Candidly, Your Honor, we believe that raising it the way we did was the appropriate way to do it. Obviously, that was inaccurate, and so it was inaccurate. We believe that the evidence before the court, given the substantial evidence standard of view, is sufficient to affirm based on the claim construction that was utilized. Okay, so assuming you're stuck with this claim construction, right or wrong, how is Mr. Kernel's – it's Kernel, right? Kernel. Kernel. How is his testimony not essentially engaging in an alternative form of claim construction? Well, what – Claim 5 requires the arrestor assembly to be pivotable. That's what the exact claim language says. Well, that's what you're arguing, but it says there's a comma before the where in clause, so it says where in the arm pivots. But, Your Honor – But you didn't ask the court to say the claim actually requires the arrestor assembly to pivot. Again, I'm just – the claim language itself, it's Column 8, or yeah, Column 8, Line 15, 16. It says specifically the arrestor assembly is pivotable. What about the language below that that was highlighted by your adversary that says where in the force causes the arm to shift to the lowered position? Yes, Your Honor. And that's the arm, right? The force, though, is communicated to the arrestor assembly, not to the – Yeah, but it says the arm, regardless of where the force comes from, it says causes the arm to shift, where shift means pivot, causes the arm to pivot. So how is that – how is the fact that some other part of the assembly shift, pivots, how does that make the arm pivot? Well, if the – so the – first of all, the requirement is that the arrestor assembly be pivotable and that the force is communicated to the arrestor assembly. If the arm is affixed or attached or part of the arrestor assembly, then the arrestor assembly pivoting causes the arm to pivot. There's no requirement. I think the arm moves up and down. I don't think it rotates or pivots, right? I mean, the arm alone. Sure, and to follow up on that point, Your Honor, in distinguishing Claim 5 from Claim 1, there's no requirement that the arm be pivotally attached. I mean, what you're describing, it appears, is a situation where the arm itself would be pivotally attached to the unit so it could pivot or swing back and forth, and that's not a requirement of a claim. That's a requirement of Claim 1. I mean, Claim 1 specifically requires that the arm be pivotally attached and that the arm be capable of pivotal movement. But Claim 5, the only – But where do you see in Claim 5 – I mean, again, assuming this claim construction was right, but where do you see in Claim 5 that it says the arrestor assembly pivots? It says an internal cable defining a first end and a second end, the first end being coupled to the arrestor assembly to communicate a force to the arrestor assembly, wherein the force causes the arm to shift, i.e., pivot, to the lowered position. Sure, Your Honor. If you go up a few lines, I believe it's line 17, where it says an arrestor assembly connected to the vehicle structure shiftable between a raised position and a lowered position. Where it says shiftable between a raised position and a lowered position, that is, I believe, speaking of the arrestor assembly. Okay, so that claim – So you're saying shiftable means pivotable? Well, under the court's construction, shiftable would mean pivotable. Yes, Your Honor. But how do you satisfy the later limitation? Even if you satisfy that the arrestor assembly is shiftable, how is the other limitation satisfied? Yes, Your Honor. We believe if you read that lower language that appears below in that claim with the language above it, if you read that in context, it's the force, and this is what I believe Mr. Cornell testified to, that the force is communicated to the arrestor assembly and that the arrestor assembly moves in a pivotal motion. But the claim says causes the arm to shift. Sure, and if the arm, Your Honor, is affixed to the arrestor assembly and the arrestor assembly is moving in a pivotal motion, Mr. Cornell testified that that pivotal movement, which affects the arrestor assembly, that's sufficient to satisfy the limitation that the arm pivot. I mean, that's what he testified to, we believe. Again, I'm a little confused on all of this. You're saying the arrestor assembly does pivot? Yes, the claim itself says— I mean, there's a wheel that rotates or pivots, but the assembly itself doesn't pivot. The testimony at trial, Your Honor, was that the wheels or rollers are part of the arrestor assembly, and it was undisputed that the wheels or rollers pivot, and so the arrestor assembly does operate through a pivotal movement, being the movement of the wheels or rollers. So you're saying if the court's claim construction was right, that shift, as used in the lower limitation, has to mean pivot, then shift the bull in reference to the arrestor assembly must mean pivotal. Yeah, I believe, Your Honor, he—I believe that's part of the court's claim construction. But yes, to answer your question, yes, that is what we're saying. And so that shiftable language, meaning that the arrestor assembly is shiftable— but again, you're talking about wheels or pulleys that are part of the assembly that rotate, but not the assembly itself. I mean, it's like saying on my car, the wheels on my car pivot, therefore when I go from point A to point B, my car pivots. My car is not pivoting. My car is not rotating. The wheels rotate, but the car doesn't rotate. And, Your Honor, I believe that the testimony trial was that it was sufficient to satisfy the claim that there be a pivotal movement in the operation of the assembly in the arm, and what Mr. Cornell testified is that that pivotal motion is satisfied by the wheels and rollers, which their own expert acknowledged that that was a pivotal movement, and that without the pivot, it wouldn't work. I mean, you had to have that pivotal movement. How do we get around the fact that we have to vacate this damages award because of the jury not following the jury instructions? Your Honor, I would cite the Reithe case. That's the 56 F3rd 1538 where it talks about the reasonable royalty language is a floor, not a ceiling. And if you have a damage award, as you do in this case, that is within the scope of the evidence presented at trial, that that award can be sustained. There's no doubt that the jury could have and probably should have done something different in the way it calculated it, but the end result was an award that was well within the scope. The amount, I think, was $465. But you can't use the same base sales if the court says you can – if you award lost profits, you can't award reasonable royalty on those same sales, and they use the exact same base sales. They use the total sales for both. So that has to be wrong, right? Well, what the jury did was they shaved both the profits by $200,000 and the percentage by a few percentage points, and we don't know exactly why they chose to do that, whether that was to account for the fact that they were awarding both or not. What we know for sure is that that total number is within the scope of the evidence presented in terms of damages. Our evidence was – That's not good enough. When the royalty – you know the royalty is on the entire base, right? So there's some sort of double recovery. I agree with you that on the lost profits, you don't know what – for how many sales lost profits were awarded or if the amount of lost profits were changed. But in any event, you have to admit that there's some sort of double recovery here since the reasonable royalty is on the entire base. Yes, Your Honor. We wouldn't admit there's a double recovery because, again, they awarded less in total than we'd asked for. So it wasn't like they awarded – There's lost profits on some portion of the base, and then there's reasonable royalty on the entire portion of the base. How can that be proper? Yes, Your Honor. I mean, and had they awarded us the full amount of profits that we'd asked for and then a reasonable royalty, there's no doubt that that would have been grossly excessive. I believe that's the standard, by the way. It's grossly excessive. We don't believe it's grossly excessive for them to have awarded us less than the evidence. So you're saying if there's an obvious legal error in what the jury did, that as long as the numbers are still within reason, it's okay? That is what we're saying, Your Honor, that the question is whether the award itself was grossly excessive. We don't believe it is because it's within the scope of the evidence presented at trial. I don't think that's the question. It's not whether it's grossly excessive. It's whether it's legally incorrect because it's a double recovery. Yes, Your Honor. And you haven't answered that. You haven't yet answered our questions about why that is proper to use the same base for both lost profits and reasonable royalty recovery. Yes, Your Honor, and again, our reading of the law is as long as the amount of the award is not grossly excessive. Well, let's assume you're wrong on that. Sure. Then why is it legally proper to have a double recovery to base both lost profits and reasonable royalties on the same base? Yeah, and without a doubt, the case law says that you calculate a reasonable royalty only as to those amounts for which you don't recover lost profits. I mean that's the way if the calculation is to be performed correctly, that's the way it should have been performed. The jury instruction that was utilized and the way it was filled out, it should not have been filled out that way. There's no dispute about that. I'm not trying to argue that if I had to do it all over again, I would have used maybe the same instruction or – but that was what was agreed upon by the parties and submitted by the court, and the jury filled it out incorrectly. But now here on review, the question as I understand it is whether the – as suggested by the case law, is whether the amount itself was grossly excessive, and we simply don't believe it was because it falls within the scope of the evidence. I mean had the jury put that entire amount on either line – well, not on either line, but on the profits line, it clearly would have been correct. I mean at least in the sense of the form would have been right and the number would have been fine. But what happened here was that amount is split between the royalty and the profits, and that split then causes it to appear that there was this error by the jury in how they – in basically calculating the royalty on the entire amount. And so there's no – so I guess what I'm saying, Your Honors, I agree with you. There was error in the way the jury went about filling out that form, but I don't think that that's the same thing as saying that that end amount is unsupportable. The end amount that they came up with was supported by the evidence, and we believe on that basis can be sustained. Okay, your time is up. We'll give you your first full five minutes for rebuttal. And I'm doing that because we went over with him. I'm going to let the district judge come out on me here. I mean this case is a mess. We probably have the wrong claim construction, though it's probably – the complaint about that is probably waived. We've got sort of real questionable evidence because it's clear that your twin man can't be used without a tether, so, you know, at least you would have been subject to an inducement or a contrived claim. And it sure looks like you had all your distributors selling these things or selling the tether with them, whether they're separately wholly owned distributors and maybe they didn't sue all the right people. We've got debates about the scope of the injunction. We've got debates about the damages, and we're talking $400,000. So why has this not settled? Because, A, it relates to products that will go on selling for years and years and years. Are you still selling those products? No, we stopped voluntarily even before the injunction was issued. We stopped the day after that. So what are we talking about, years and years and years? Well, I – If you stopped voluntarily before the injunction was ever even issued. Well, we're not selling them. I mean, it is a hardship to our company because we're not selling a product that was very popular, that we worked hard to get our own patent on, and, you know, so – There's obviously not a ton of profits if we're only talking $400,000 in damages. Well, you have to remember that this case was essentially sued out the day, you know, the first day our product hit the market, and the court didn't allow anything prior. So we've got a very defined time period here. You know, the patent is relatively simple and straightforward. The products that are accused are simple and straightforward. Absolutely. The amounts are not excessive. Absolutely. And, you know, some cases cry out for a judicial resolution. Other cases cry out for a business resolution. Why doesn't this cry out for a business resolution rather than running the clock and having this legal dispute run on and on and on? Possibly a new trial on damages. I mean – We stepped up as far as we possibly could to try and get this thing resolved before trial. Have there been ongoing settlement discussions? Well, there certainly were up to the point of the day of trial. There were lots of discussions of varying different alternatives. And so, you know, I don't think – there wasn't an agreement. I don't think that any party can be faulted. But there was – Because I agree with Judge O'Malley. I think this claim construction was wrong, and on the correct claim construction, I think you've got some serious exposure for that multi-man unit. And on the tethered unit, I mean, it almost seems ridiculous that we're arguing about whether it was sold with or without a tether when everybody knows the thing doesn't work without a tether. And if it wasn't direct, it would be contributory or induced infringement. So you've got some serious liability exposure one way or the other here. Sure. And had they asserted induced infringement, we would be in a different situation. But they're also commencing – they've also commenced litigation against all of the distributors. Well, maybe that's another good reason to work out some kind of a settlement. Certainly. Be done with it. Certainly. But here today, we're only talking about the Garlock entity. Whether the claim of inducement was included, it wasn't. Whether Garlock sold the tether, they didn't. It doesn't mean those other claims go away against other distributors, but those are separate and independent companies, and it's not the entity that's before you today. Okay. We used up all your time, but I'll give you just two minutes to make whatever points in rebuttal you'd like to make. Your Honor, I would just make one or two points. The sole evidence as to the damages was included in a demonstrative exhibit outside Mr. Carter's testimony, which is at A1084. That is – that's the sole evidence. It came in over my objection because it was demonstrative. But this is – if we're looking at what is or is not included in the damages, that's the whole – And what page was that? It starts at 1084. The real significant page is 1088. And that includes the – you know, this is the evidence. If we're talking about whether or not the tether was included, this is the evidence, and the tether is not part of that evidence. How do we know whether it was or was not included? Garlock never sold the tether. They've never, ever sold the tether. They've never bought a tether. Did you object to the fact that the trial court allowed a demonstrative aid? I did. I mean, did you object here in your brief? I didn't see that in your brief. I don't recall whether I did or did not. I mean, we objected on the record that the trial court allowed it. Right, but you need to raise that as a ground for appeal, right? Right. And I'm not saying – what I'm saying is I'm not objecting to what's contained in here. I'm saying this is the whole evidence as to the damages. There is no other document out there. So I'm not objecting to what's contained in there. What I'm saying is, you know, if you're looking to say is a tether included or not, there's nothing here that indicates that is in any way. So 1088, that's the plaintiff's sales. 1089, also plaintiff's sales? No, these are – 1088. That's the Raptor's sales. These are the Garlock's sales. Even though the heading is AES Raptor? Yeah. These are the two numbers that incorporated 100% of what Garlock's sales were on the two products, which Mr. Carter then opined under the Panduit factors would have all been – have gone to AES Raptor regardless of the geographic limitations and the other competing products. Okay. All right. Thank you. Thank you. That case will be submitted.